UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

VIRTU FINANCIAL, INC. and
VIRTU AMERICAS LLC,

Defendants.

Civil Action No. 1:23-cv-8072-JGK

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

Lorin L. Reisner
Andrew G. Gordon
Jessica S. Carey
Paul D. Brachman
Daniel H. Levi
Emily M. Hoyle
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Tel.: (212) 373-3000
lreisner@paulweiss.com

*Attorneys for Virtu Financial, Inc. and Virtu Americas LLC*

Dated: March 25, 2024

**TABLE OF CONTENTS**

**Page**

**PRELIMINARY STATEMENT** ............................................................................................. 1

**ARGUMENT** ........................................................................................................................... 2

    I.     Virtu Established, Maintained and Enforced Written Policies and Procedures That Complied with Section 15(g). ............................................................................................ 2

    II.    Defendants' Statements Were Accurate and Not False by "Half-Truth." ........................... 4

    III.   Defendants' Public-Facing Statements Were General, Aspirational and Non-Actionable as a Matter of Law. .......................................................................................................... 6

    IV.   The SEC's Section 17(a)(3) Claim Against VFI Fails to Allege the "Something Extra" Required for Scheme Liability ........................................................................................... 8

**CONCLUSION** ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                         **Page(s)**

*SEC* v. *Amah*,
    2023 WL 6386956 (S.D.N.Y. Sept. 28, 2023) ...................................................................9

*Barilli* v. *Sky Solar Holdings, Ltd.*,
    389 F. Supp. 3d 232 (S.D.N.Y. 2019) ........................................................................4, 5

*In re BHP Billiton Ltd. Securities Litigation*,
    276 F. Supp. 3d 65 (S.D.N.Y. 2017) ...............................................................................6

*In re Braskem S.A. Securities Litigation*,
    246 F. Supp. 3d 731 (S.D.N.Y. 2017) .............................................................................6

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
    2021 WL 3727095 (S.D.N.Y. Aug. 23, 2021) .................................................................7

*In re Citigroup Sec. Litig.*,
    2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023) .................................................................4

*City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*,
    752 F.3d 173 (2d Cir. 2014) ............................................................................................8

*DoubleLine Cap. LP* v. *Construtora Norberto Odebrecht, S.A.*,
    413 F. Supp. 3d 187 (S.D.N.Y. 2019) .............................................................................6

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago* v. *JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009) ............................................................................................7

*In re Equifax Inc. Securities Litigation*,
    357 F. Supp. 3d 1189 (N.D. Ga. 2019) ...........................................................................7

*Grant* v. *Ursula Mgmt., LLC*,
    2021 WL 8382243 (E.D.N.Y. Oct. 6, 2021) ...................................................................7

*Menaldi* v. *Och-Ziff Cap. Mgmt. Grp. LLC*,
    277 F. Supp. 3d 500 (S.D.N.Y. 2017) ..........................................................................7, 9

*Ong* v. *Chipotle Mexican Grill, Inc.*,
    294 F. Supp. 3d 199 (S.D.N.Y. 2018) .............................................................................7

*SEC* v. *Rio Tinto plc*,
    41 F.4th 47 (2d Cir. 2022) ............................................................................................8, 9

*In re Sanofi-Aventis Sec. Litig.*,
    774 F. Supp. 2d 549 (S.D.N.Y. 2011) ..........................................................................4, 5

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
   417 F. Supp. 3d 379 (S.D.N.Y. 2019) ...........................................................................5

*SEC* v. *Stoker*,
   865 F. Supp. 2d 457 (S.D.N.Y. 2012) ...........................................................................9

*Suarez* v. *California Natural Living, Inc.*,
   2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019) .................................................................8

*SEC* v. *Terraform Labs Pte. Ltd.*,
   2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023) ...............................................................9

*In re Turquoise Hill*,
   625 F. Supp. 3d 164 (S.D.N.Y. 2022) ...........................................................................9

## PRELIMINARY STATEMENT

As demonstrated in our moving papers, the Amended Complaint should be dismissed because: (1) VAL established, maintained and enforced policies and procedures reasonably designed to prevent the misuse of MNPI,[1] and (2) Virtu's statements about those policies and procedures were not materially misleading. The SEC's opposition does not demonstrate otherwise.

Indeed, the SEC spent years investigating this case before filing its Complaint. Yet despite receiving tens of thousands of documents, the Amended Complaint does not allege that any Virtu employee actually misused MNPI. That should be no surprise. VAL expressly prohibited employees from misusing confidential information or accessing non-permissioned data; implemented information barriers, permissioning requirements, and systems designed to detect aberrational trading; and enforced its policies through mandatory training and compliance meetings. Those measures were "reasonably designed" to prevent—and, as the Amended Complaint unquestionably pleads, ***did prevent***—the misuse of MNPI. Unable to explain how those facts could plausibly show a violation of Section 15(g), the SEC instead argues a case it did not plead—likening VAL's systems to a "jewel vault" with an unlocked door. But that tortured analogy only highlights why the Amended Complaint should be dismissed. Unlike the SEC's imaginary vault, VAL's system had locked doors (log-ins and permissioning requirements, including for the FS Database), cameras (lockdown systems and mandatory reporting policies), and training programs designed to effectuate its compliance policies. A potential thief would not only have had to act with deliberate intent and willful disregard of VAL's systems, policies and

---

[1] Abbreviated terms in this brief have the same meaning as in Defendants' opening brief.

procedures, but would also need to possess both the skill and expertise necessary to locate the "jewel" in the vault.

The hypothetical possibility that VAL traders might, nevertheless, have accessed non-permissioned post-trade data through the FS Database—even though they were expressly told and trained not to do so—does not make VAL's policies and procedures unreasonable as a matter of law. The Court should reject the SEC's attempt to impose a standard of perfection that appears nowhere in the text of, or caselaw interpreting, Section 15(g).

The SEC's Section 17(a) claims fare no better. The SEC does not contest that Virtu's statements about its policies and procedures were either accurate,[2] or aspirational, generalized statements about its future plans. Those statements do not become materially misleading in violation of Section 17(a) because Virtu allegedly failed to explain the hypothetical *possibility* that VAL traders could potentially access non-permissioned data in violation of VAL policies. And even if VFI's statements were actionable (and they are not), those statements alone cannot provide a basis for scheme liability under 17(a)(3).

For these reasons, and those set forth in our moving brief, the Amended Complaint should be dismissed.

## ARGUMENT

### I. Virtu Established, Maintained and Enforced Written Policies and Procedures That Complied with Section 15(g).

The SEC does not dispute the substance of VAL's policies and procedures to protect MNPI, including written policies that firmly prohibited employees from accessing non-permissioned data,

---

[2] The only statement that the SEC characterizes as literally false was made in response to Customer A's questionnaire (Opp. at 1; Am. Compl. ¶ 36); however, neither of the SEC's 17(a)(2) claims relies on this statement, (*See* Am. Compl. ¶¶ 62, 65).

trainings to reinforce those restrictions, permissioning procedures and monitoring systems. (Opp. at 22.) The question is whether those policies and procedures can be considered unreasonable as a matter of law because of the hypothetical possibility that VAL traders did not follow VAL's rules, as the SEC argues in its opposition. (Opp. at 24.)

The answer is "no." Section 15(g) requires policies and procedures "reasonably designed" to prevent the misuse of MNPI—not policies and procedures that ensure perfection. VAL's policies and procedures more than meet that standard of "reasonably designed." And the law does not require otherwise, despite the SEC's assertions.

The SEC alternatively argues that even if VAL established reasonably designed policies and procedures, "discovery is needed regarding whether it appropriately enforced them and whether they were effective in protecting MNPI." (Opp. at 22.) But documents incorporated by reference into the Amended Complaint show that VAL maintained and enforced its policies through mandatory training and compliance meetings, and through its lockdown systems. The SEC does not dispute that those trainings occurred, and concedes those systems generated lockdowns, resets, and supervisory alerts. (*Id.*) And while the SEC questions whether VAL's systems were "well-functioning and effective" (*id.*), such speculation in its opposition cannot make up for the pleading deficiencies in the Amended Complaint. The SEC spent three years looking for evidence that VAL's policies and procedures were ineffective, examining over 30,000 documents and interviewing multiple Virtu employees. In the end, the Amended Complaint alleges no misuse of any MNPI. Vaguely suggesting that further discovery may reveal what its multi-year investigation did not is no answer. The SEC has had two opportunities to plead that VAL failed to maintain and enforce its policies and procedures. It has not; as such, the Amended Complaint should be dismissed.

## II. Defendants' Statements Were Accurate and Not False by "Half-Truth."

The SEC does not dispute that Defendants' statements describing its information barriers designed to safeguard sensitive client information—including password protections, logical access controls and entitlement reviews—were literally true. (*See* Opp. at 7–9.) Nor does it dispute that only certain employees with a need to access sensitive customer information were permitted to access that data. (*Id.* at 9–10.) Rather, the SEC contends that these accurate statements were false or misleading because Defendants did not disclose the hypothetical possibility that employees might access non-permissioned post-trade data through the FS Database, in contravention of Virtu's policies and trainings. (*See id.* at 7–12.) This attempt to invoke falsity by half-truth fails for several reasons.

To adequately plead falsity by half-truth, the omitted material must "contradict the disclosures" at issue. *Barilli* v. *Sky Solar Holdings, Ltd*., 389 F. Supp. 3d 232, 252 (S.D.N.Y. 2019). The SEC alleges no such contradictory facts. The Amended Complaint and documents referenced therein show that policies and procedures designed to safeguard client information—including access controls, physical separation, and review of approved personnel—were in place. (Am. Compl. ¶¶ 47–48, 51–58; *see also* Mot. at 5–10). And the SEC does not allege that Defendants' policies prohibiting employees from viewing non-permissioned data were not followed. An allegation that an employee *hypothetically* could have accessed the FS Database directly to obtain post-trade customer data without permission does not contradict or render false or misleading Defendants' accurate statements regarding the fact that measures were in place to prevent precisely such access. *See, e.g.*, *In re Citigroup Sec. Litig.*, 2023 WL 2632258, at *16 (S.D.N.Y. Mar. 24, 2023) (challenged statements were not false or misleading because "nowhere in the [c]omplaint do [p]laintiffs allege facts showing that [defendant] did not, in fact" take the steps described therein); *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 569 (S.D.N.Y. 2011)

4

(a statement of literal truth is not actionable where "[n]o reasonable investor would have construed this statement to make any representation regarding any of the omitted facts").

The SEC next argues that "statements of literal truth 'can become, through their context and manner of presentation, devices which mislead investors.'" (Opp. at 7–8 (quoting *Boston Retirement Sys.* v. *Alexion Pharmaceuticals, Inc.*, 556 F. Supp. 3d 100, 119 (S.D.N.Y. 2021)).) But the Amended Complaint does not allege how the "context" or "manner" in which Defendants made their accurate statements could have rendered them misleading to a reasonable investor. And some of the challenged statements, particularly Defendant's public-facing statements (November 2018 and March 2019 VFI presentations (Am. Compl. ¶ 29); November 2018 VFI CEO's statement (*id.*); VAL/VFI's March 2019 letter (*id.* ¶ 30); and VFI's January 2019 press release (*id.* ¶ 31)), focused not on Virtu's policies and procedures to protect customer data, but on issues such as Virtu's general business, financial performance, and acquisition of ITG.

In those contexts, no reasonable investor would have understood brief references to information safeguards to be conveying that Virtu's policies and procedures were perfect, nor to mean that Defendants were presenting the public with all of the information concerning the information barriers applicable to every one of its databases. *See, e.g.*, *Barilli*, 389 F. Supp. 3d at 252 (statements about company executive's professional history and abilities did not "bec[o]me misleading in the absence of information relating to [his] past alleged misdeeds because none of them affirmatively represented that [he] did not engage in past improper transactions . . . , nor would the statements lead a reasonable investor to conclude as much"); *Sjunde AP-Fonden* v. *Gen. Elec. Co.*, 417 F. Supp. 3d 379, 401–02 (S.D.N.Y. 2019) (statements about the sale of defendant's insurance businesses did not give rise to a duty to disclose its retention of "billions of dollars" of insurance liabilities, as "[t]o hold otherwise would mean that any reference to [defendant's] old

insurance businesses, however oblique, would obligate [defendant] to disclose the insurance liabilities in its portfolio").

### III. Defendants' Public-Facing Statements Were General, Aspirational and Non-Actionable as a Matter of Law.

Defendants' public-facing statements also cannot support a Section 17(a) claim because they consist of non-actionable generalizations and aspirational statements upon which no reasonable person would rely. *See, e.g.*, *DoubleLine Cap. LP* v. *Construtora Norberto Odebrecht, S.A.*, 413 F. Supp. 3d 187, 211 (S.D.N.Y. 2019) (generic statements about "reputation, integrity, and compliance" are non-actionable, especially where they "are explicitly aspirational, with qualifiers such as 'aims to'").

While otherwise non-actionable statements can be rendered actionable when used "to parry, and reassure investors in the face of, growing concerns about corporate wrongdoing," there is no allegation here that Defendants did so. *In re Braskem S.A. Securities Litigation*, 246 F. Supp. 3d 731, 757 (S.D.N.Y. 2017) (general and aspirational statements about corporate integrity did not become actionable because there was no allegation that defendant "deployed these documents to quell a controversy or to lull a discontented investor or regulator"). And the Amended Complaint does not allege that Defendants' statements regarding information security were "extensive, frequent, and prominent" as was the case in *In re BHP Billiton Ltd. Securities Litigation*, 276 F. Supp. 3d 65, 80 (S.D.N.Y. 2017).

The SEC also cannot meaningfully dispute that Virtu's public-facing statements contained the type of qualifying language that courts in this Circuit have found to be non-actionable.[3] *See, e.g.*, *Grant* v. *Ursula Mgmt., LLC*, 2021 WL 8382243, at *3 (E.D.N.Y. Oct. 6, 2021) (defendant's statement in offering documents that it "utilizes a variety of risk analyses . . . and regularly monitors exposure levels in order to ensure portfolio downside risk stays at controlled level[s]" was non-actionable); *Menaldi* v. *Och-Ziff Cap. Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 512 (S.D.N.Y. 2017) (statement that defendant had "implemented a global compliance program to address the legal and regulatory requirements . . . includ[ing] comprehensive policies and supervisory procedures . . . to monitor compliance" was non-actionable). For example, statements indicating that Virtu "has established policies and procedures" "***designed to*** safeguard sensitive client information," (Am. Compl. ¶ 29 (emphasis added)), "did not, and could not, amount to a guarantee that its choices would prevent failures in its risk management practices." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago* v. *JP Morgan Chase Co.*, 553 F.3d 187, 205–06 (2d Cir. 2009) (statement that defendant had "risk management processes [that] are highly disciplined and

---

[3] The SEC devotes much of its opposition on this point to an out-of-Circuit case, *In re Equifax Inc. Securities Litigation*, 357 F. Supp. 3d 1189 (N.D. Ga. 2019), that has never been cited by a court in this District, and which rejects *Ong* v. *Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199 (S.D.N.Y. 2018), which is frequently cited favorably in this District. *See, e.g.*, *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2021 WL 3727095, at *9 (S.D.N.Y. Aug. 23, 2021) (citing *Ong*'s non-actionable statements holding). But, the statements at issue in Equifax—including that Equifax was a "trusted steward" of personal data, that it employed "strong data security and confidentiality standards," and that it "maintain[ed] a highly sophisticated data information network that includes advanced security, protections and redundancies"—contained more concrete efficacy assurances than the statements at issue here. 357 F. Supp. 3d at 1218.

***designed to*** preserve the integrity of the risk management process" was non-actionable (emphasis added)).

Additionally, the assertion in VFI's January 2019 press release that "Virtu intends to continue to maintain and enforce appropriate information barriers" (Am. Compl. ¶ 29), remains "too open-ended and subjective" to be actionable. *See City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*, 752 F.3d 173, 186 (2d Cir. 2014) (representations that defendant prioritized "adequate diversification of risk" and "avoidance of undue concentrations" are non-actionable).[4] And notably, the SEC's opposition avoids engaging at all with VAL/VFI's March 2019 letter (*id.* ¶ 30), which states generically (and entirely truthfully) that "Virtu and ITG each maintained our own procedures to segregate and protect sensitive client data."

## IV. The SEC's Section 17(a)(3) Claim Against VFI Fails to Allege the "Something Extra" Required for Scheme Liability

The SEC argues it has adequately alleged scheme liability under Section 17(a)(3) because VFI "made and disseminated" false and misleading statements. (Opp. at 15–16.) But where, as here, the Amended Complaint fails to allege "distinct" and "inherently deceptive" conduct that goes "beyond the misrepresentations," there is no "scheme" and thus no liability under Section 17(a)(3). (Mot. at 20.) In short, "misstatements and omissions cannot form the 'sole basis' for liability under the scheme subsections." *SEC* v. *Rio Tinto plc*, 41 F.4th 47, 53 (2d Cir. 2022). Claiming that VFI "disseminated" its own alleged misstatement does not add anything to the equation.

---

[4] *Suarez* v. *California Natural Living, Inc.*, cited by the SEC, is distinguishable: while "[t]he term 'natural' is an affirmative claim about a product's qualities," 2019 WL 1046662, at *7 (S.D.N.Y. Mar. 5, 2019), terms like "appropriate" are subjective.

The SEC cites two cases for the proposition that "a defendant may be liable under Section 17(a)(3) for disseminating its own misstatements." (Opp. at 16.) But each involves scheme allegations that went well beyond dissemination of the exact same misstatements covered by Section 17(a)(2). The complaint in *SEC* v. *Amah*, 2023 WL 6386956 (S.D.N.Y. Sept. 28, 2023), alleges that the defendant "repeatedly used materially false and misleading statements" and "engaged in additional deceptive conduct to perpetuate his fraudulent scheme," including "fabricating performance statements" on "at least two occasions." (*Id.*, ECF No. 1 at 1–2) Likewise, in *SEC* v. *Terraform Labs Pte. Ltd.*, the SEC alleged that the defendants made "and disseminated countless misrepresentations to investors, potential investors, and the public" but also "secretly made a deal" to manipulate the valuation of a cryptocurrency. 2023 WL 8944860, at *17–18 (S.D.N.Y. Dec. 28, 2023).

Here, by contrast, the SEC fails to plead the "something extra" required for scheme liability. *Rio Tinto*, 41 F.4th at 54; *see also SEC* v. *Stoker*, 865 F. Supp. 2d 457, 467 (S.D.N.Y. 2012) (finding that "the misrepresentations and omissions were part of the conduct, but they were not the entirety of it"). VFI's alleged "dissemination" is inextricable from the making of the alleged misrepresentations. *See In re Turquoise Hill*, 625 F. Supp. 3d 164, 248–49 (S.D.N.Y. 2022); *Menaldi*, 277 F. Supp. 3d at 519–20 (plaintiff cannot merely "repackage the misrepresentation allegations" as the basis for the alleged scheme). Under the SEC's theory, a defendant who makes one misstatement over the phone to an investor would be liable for both a "scheme" and a misstatement based solely on the misstatement, in contravention of Second Circuit law. *Rio Tinto*, 41 F.4th at 53. Where, as here, disseminating and making an alleged misstatement constitute the same, singular act, it is "an insufficient basis for scheme liability." *See id.* at 48–49.

As the SEC fails to plead something more, its Section 17(a)(3) claim against VFI should be dismissed.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in our opening brief, the Amended Complaint should be dismissed with prejudice in its entirety.

Dated: March 25, 2024
      New York, New York

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Lorin L. Reisner*
Lorin L. Reisner
Andrew G. Gordon
Jessica S. Carey
Daniel H. Levi
Emily M. Hoyle
1285 Avenue of the Americas
New York, New York 10019
Tel.: (212) 373-3000
lreisner@paulweiss.com

Paul D. Brachman
2001 K Street, NW
Washington, DC 20006-1047
Tel.: (202) 223-7300
pbrachman@paulweiss.com

*Attorneys for Virtu Financial, Inc. and Virtu Americas LLC*

# CERTIFICATION OF COMPLIANCE

I hereby state that the foregoing Memorandum of Law was prepared on a computer using Microsoft Word. Pursuant to the word count system in Microsoft Word, the total number of words in the Brief, excluding the caption, table of contents, table of authorities, signature block, and this certification is 2,683.

Dated: March 25, 2024
      New York, New York

                                                 */s/ Lorin L. Reisner*
                                                 Lorin L. Reisner